UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| PAULINE MACARENO AND MARGIE CANDELARIA | CIVIL ACTION NO. 08-0292 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| MICHAEL KARON, BFD HOLDINGS, INC. AND EAGLE OIL MANAGEMENT CO., LLC | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 21) filed by defendants Michael Karon ("Karon"), Eagle Oil Management Company, LLC ("Eagle Oil"), and BFD Holdings Inc. ("BFD") (collectively "defendants") and a Cross-Motion for Summary Judgment (Record Document 26) filed by plaintiffs Pauline Macareno ("Macareno") and Margie Candelaria ("Candelaria") (collectively "plaintiffs"). For the reasons which follow, both motions are **DENIED**.

**Underlying Facts**

Macareno, an educated business woman, began dating Agustin Gonzalez ("Gonzalez") in 2002. She was introduced by Gonzalez to his friend Karon, whom Gonzalez had employed to operate various oil and gas interests that Gonzalez had procured in Louisiana. While in Louisiana working with and for Gonzalez, Karon became aware of a large mineral lease that was for sale. Karon told Gonzalez about this mineral lease. Based on Karon's information, Gonzalez arranged to purchase the mineral lease through his energy holding company, Exodus Energy LLC. The mineral lease was subsequently distributed, 40% to a holding company solely owned by Karon, BFD Holdings, Inc. - in exchange for Karon's agreement to operate the mineral lease - and 60%

to other sources as Gonzalez indicated. For personal reasons, Gonzalez asked Karon to sell 10% of his 40% interest to Macareno for a sum of $200,000. Karon and Macareno, as well as her mother, Candelaria, entered into a sales contract with BFD for a share of the mineral leases that recites consideration of $100. However, Macareno and Candelaria wired $200,000 to Karon which was deposited in BFD's bank account and was disbursed, according to Karon, under Gonzalez's orders. Never during this process did Karon make any representations to Macareno, nor did Macareno or Candelaria ask anything of him.

Almost immediately thereafter, Karon sent Macareno and Candelaria an operating agreement under which Karon agreed, through his wholly owned limited liability company, Eagle Oil Management Company, LLC, to operate the leases for them for certain fees and for the 30% interest in the mineral leases already received. To date, Macareno and Candelaria have not paid any of the working interest expenses billed to them under the terms of operating agreement. Macareno and Candelaria bring this suit against Karon and his two wholly owned limited liability companies, BFD Holdings, Inc., and Eagle Oil Management Company, LLC. They ask the Court to rescind the sale and award damages. They base their claims on the following: (1) the securities are unregistered in violation of the laws of Louisiana and California and are not subject to any exemption thereunder; and (2) Karon omitted material facts in contravention of the securities laws of the United States and of Louisiana and California.

Defendant Eagle Oil Management Co., LLC, is cross claiming against plaintiffs for $54,480.76 in outstanding cleanup and operating costs unpaid by Macareno, for contractual interest of 10% per annum on the same, and for legal fees and expenses

incurred in attempting to collect outstanding expenses.[1] In the alternative, Eagle Oil seeks the surrender of the working mineral lease ownership plus all fees and legal expenses.

In relation to the pending motions, defendants argue that they are entitled to summary judgment because Karon made no statements or representations to Macareno or Candelaria and even if he had, Macareno and Candelaria bought the securities on the word of Gonzalez, not Karon. Defendants further argue that even if these were the type of securities that must be registered in Louisiana or California, they fall into statutory exemptions for private offerings. Plaintiffs argue that by selling the securities without any representations whatsoever, Karon violated the Louisiana and California anti-fraud laws.[2] Plaintiffs do not answer the defendants' argument that the securities fall into a statutory exemption from registration, nor do plaintiffs seek summary judgment on the issue of nonregistry.[3]

---

[1] In the defendants' Motion for Summary Judgment, defendants state that plaintiffs currently have not paid over $90,000 allegedly owed to Eagle Oil.

[2] Macareno and Candelaria represented they were also bringing suit under federal securities laws in the original complaint. Yet, their response to the motion for summary judgment makes clear that they now only maintain their suit under state law. Even if the plaintiffs sought to maintain their suit under federal law, the facts of this case would not permit liability on the part of the defendants. Violations under federal law require a plaintiff to exercise due diligence in the purchase of a security. There is no indication that the plaintiffs exercised due diligence here. Further, federal law requires a showing of reliance whereas state law does not. Here, there is no evidence that the plaintiffs relied on the omissions or statements from Karon, as compared to Gonzalez, in making their decision to purchase the securities.

[3] Neither party has moved for summary judgment on Eagle Oil's crossclaims.

## Law and Analysis[4]

**I.  Summary Judgment Standard.**

"Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law."  Swanson v. Hearst Corp. Long Term Disability Plan, 586 F.3d 1016, 1018 (5th Cir. 2009) (citing Fed.R.Civ.P. 56©).  "We resolve doubts in favor of the nonmoving party and make all reasonable inferences in favor of that party."  Dean v. City of Shreveport, 438 F.3d 448, 454 (5th Cir. 2006).  No genuine issue of material fact exists if the evidence is such that no reasonable juror could find for the nonmovant.  Wheeler v. BL Dev. Corp., 415 F.3d 399, 402 (5th Cir. 2005).  If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

**II.  Choice of Law.**

The parties do not agree as to whether Louisiana or California law should apply here.  Defendants argue that California law applies because all discussions and the actual sale took place in California.  Plaintiffs argue that it does not matter which law applies because the end result is the same under both the laws of both states.

---

[4] Originally, this complaint was removed to federal court based on both federal question and diversity jurisdiction.  There is no longer an issue of federal law but the Court has jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship.

This Court must first determine the law that applies to this case. It is well established that this Court, as a federal court sitting in Louisiana, must apply the conflict of law rules that a Louisiana court would employ use in determining the choice of law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co.,313 U.S. 487 (1941). Louisiana Civil Code Article 3515 states that "[e]xcept as otherwise provided . . . an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." The criteria the statute utilizes to evaluate the interest of the relative states are: "(1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state." The Louisiana Civil Code specifically provides that "[r]eal rights in immovables situated in this state are governed by the law of this state." La. C.C. Art. 3535. Mineral rights in Louisiana are incorporeal immovables. See La. C.C. Art. 470 ("Rights and actions that apply to immovable things are incorporeal immovables . . . such as . . . mineral rights. . . . "); La. R.S. 31:18 ("A mineral right is an incorporeal immovable"); see e.g., Succession of Simms, 175 So.2d 113 (La. App. 4 Cir. 1965). Here, the mineral rights affecting real property at issue in this case are located in Louisiana.

In the notes to Louisiana Civil Code Article 3535, the drafters explain that the rationale of the law was precisely to ensure that disputes over minerals or disputes which would affect mineral rights would be governed by the laws of the state where the minerals were located. See note (d) ("In a mineral-rich state like Louisiana with a substantive law


quite different from that of its neighboring states, it would be unwise to go beyond these exceptions and to abandon the situs rule altogether."). Here, the judgment will directly affect the ownership of mineral rights affecting real property located in Louisiana. This is the very situation that the conflict of law provisions were meant to address. Thus, even where securities are concerned, the substantive law of Louisiana applies because the interest in the land within the borders of the forum state overrides any interest that California might have in regulating its securities market. See Munn v. Wadley, 192 La. 874 (La. 1939) (holding that a mineral right was not personalty but realty and therefore the law of Louisiana governed the transfer of title in the liquidation of company which owned the mineral right); Hemler v. Adcock, 166 La. 704 (La. 1928) (holding that in a suit to recover interest in oil and gas lease on lands in Arkansas were governed by the laws of Arkansas). Therefore, the law of Louisiana applies to plaintiffs' claims for rescission of the sale and damages.

### III. Rescission and Damages Due to Failure to Register

There appears to be no dispute that the interests at issue in this case qualify as securities. Under Louisiana law, securities include fractional non-producing working interests in oil and gas leases.[5] See Caldwell v. Trans-Gulf Petroleum Corp., 311 So.2d 80 (La.App. 2 Cir. 1975). Further, under Louisiana Securities Law,[6] the term "Issuer" includes

---

[5] Non-production interests are also securities under California law. See Cal. Corp. § 25019 ("'Security' means . . . certificate of interest or participation in an oil, gas or mining title or lease or in payments out of production under that title or lease."); see also S.E.C. v. Joiner Leasing, 320 U.S. 344 (1943) (holding that assignments of oil and gas leases were not beyond the scope of the federal securities act).

[6] See La. R.S. 51:701, *et seq.*

a person who divides such an interest for the purpose of sale of a fractional part. See id.[7]

Generally, securities are required to be registered in Louisiana under Louisiana Revised Statute 51:701 *et seq.* Specifically, Section 705(A) provides:

> It shall be unlawful for any person to offer for sale or sell any securities in this state unless any of the following conditions are met:
>
> (1)   They are subject to an effective registration statement under this Part.
> (2)   The security or transaction is exempt under R.S. 51:708 or 709.
> (3)   The securities are federal covered securities . . . .

La. R.S. 51:705(A). There is also a jurisdictional requirement that the security be offered or sold in the state of Louisiana. See La. R.S. 51:705 ("in this state"). A sale of mineral rights, however, is not complete until the sale is registered in the public record. Further, plaintiffs have stated, and defendants do not dispute, that Karon was a resident of Louisiana at the time of the sale and had the purchase price for the sale wired to a Louisiana bank account. Thus, there were sufficient contacts with the state such that the "sale" can fairly be said to have taken place in Louisiana. There is no dispute that the securities were unregistered. Thus, the only opportunity for defendants to escape liability is to put forth evidence that they are entitled to one of the statutory exemptions.

Defendants claim the Private Offering Exemption pursuant to Title 10, Part XIII, Section 705 of the Louisiana Administrative Code. This exemption requires, in relevant

---

[7]Under California law, securities are required to be "qualified," which in practice amounts to a type of registration. See Cal. Corp. §§ 25110, 25120, 25130. Unless federal law preempts state regulation, no person may "offer or sell" in California "any security" that is not qualified unless it is exempted by statute. Id. at § 25110.
  After a cursory review of the pertinent California statues, and case law interpreting those statutes, it appears that California law required the securities at issue in this case to be "qualified." Moreover, considering the undisputed record evidence, defendants' ability to prove the private offering exemption is questionable at best.

part, that the issuer of the security not engage in certain general solicitations, not offer the security for public offering, and importantly that "the buyers represent that they are buying for investment and not for public distribution or resale." LAC 10:XIII.705. Defendants, who have the burden of proving any and all exemptions, have presented no evidence that Macareno was buying for investment. Thus, summary judgment is **DENIED**. Plaintiffs' claim for rescission and damages based on failure to register will proceed to the trier of fact.

### IV.  Rescission and Damages due to Fraud

Section 712(A)(2) of the Louisiana Securities Law provides:

> It shall be unlawful for any person . . . [t]o offer to sell or to sell a security by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person in the exercise of reasonable care could not have known of the untruth or omission.

La. R.S. 51:712. Thus, in order to prevail in an action under the Louisiana Securities Law, a plaintiff must show: (1) the defendant made a false or misleading statement of a material fact or failed to state a material fact necessary in order to make the statement not misleading; (2) the plaintiff did not know of the untruth or omission; (3) the defendant knew, or in the exercise of reasonable diligence, could have known, of the untruth or omission. See <u>Ponthier v. Manalla</u>, 06-632 (La.App. 5 Cir. 1/30/07), 951 So.2d 1242, 1255.[8] Louisiana courts consult federal jurisprudence for guidance in the application of Louisiana securities laws since Louisiana's Blue Sky Law was modeled after the federal system,

---

[8] A cursory review of California's statutory scheme reveals that the fraud provisions of Louisiana and California securities laws are constructively the same. Thus, it appears that even if California law were to apply to the instant matter, the end result under California law would be consistent with the end result under Louisiana law.

namely the Securities Act of 1933 and the Securities and Exchange Act of 1934. See e.g. Taylor, 533 So.2d at 1386; Dufour v. U.S. Home Corp., 581 So. 2d 765, 768 (La.App. 4 Cir. 1991). However, the Louisiana and federal standards are not identical. While Rule 10b-5 of the Securities and Exchange Act of 1934, which appears at 17 C.F.R. 240.10b-5, requires intent to defraud on the part of the defendant and due diligence on the part of the plaintiff, the standard under Louisiana law is negligence. See Landry v. Thibaut, 523 So.2d 1370, 1380 (La.App. 5 Cir. 1988). Further, while plaintiff must plead all elements, "defendant must sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of the untruth or omission. The defense of contributory negligence of the purchaser is [also] available." Id.

As noted previously, the leases at issue in this case are securities within the meaning of the law. Moreover, there is no dispute that plaintiffs did not know of the untruths or omissions at issue in this case. Likewise, there is no dispute that defendants knew, or in the exercise of reasonable diligence, could have known, of the untruths or omissions at issue. Thus, the Court will move to the issue of materiality.

Again, because the jurisprudence of Louisiana's securities law is relatively undeveloped, courts routinely turn to federal decisions in this area for guidance as the Louisiana law was modeled after the federal system. See Dufour, 581 So.2d at 768 (La.App. 4 Cir.,1991); TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 445 (1976). The standard for materiality under federal law is "an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor." Id. The Fifth Circuit has stated that "materiality is determined by evaluating whether there is '[a] substantial likelihood that' the false or misleading statement 'would have been viewed by the reasonable investor as

having altered the total mix of information made available.' Materiality thus looks to likely potential." Nathenson v. Zonagen Inc., 267 F.3d 400, 418-19 (5th Cir. 2001) (citation omitted).

Here, plaintiffs allege that the following facts were not revealed to them before the execution of the sale of the securities: (1) nature of the security; (2) lease to which it pertained; (3) production history of the lease; (4) whether defendants had experience in oil/gas field; (5) how the purchase price would be applied; (6) how the purchase price was determined; and (7) what share of the acquisition costs of the mineral lease were paid for by the plaintiffs. All of these facts are certainly significant facts that "would have been viewed by the reasonable investor as having altered the total mix of information made available." Id. at 418-19. Further, Karon is not a broker or a disinterested party acting on the orders of the plaintiffs, and, therefore, is not relieved of his statutory duty to disclose material facts pertaining to the sale of the security. Defendants state that "plaintiffs invested in this deal because of their faith in Mr. Gonzalez," but it is clear that reliance is not a part of the requirements for fraud in Louisiana. Further, the standard for materiality is objective, not subjective. Therefore, the omissions were clearly material to the sale of the securities.

Now the Court must turn to the more difficult inquiry, namely Section 712's prohibition against "any omission to state a material fact *necessary in order to make the statements made . . . not misleading*." La. R.S. 51:712 (emphasis added). This key statutory language is, regrettably, not artfully worded. While the plain language of Section 712 indicates that mere omissions are insufficient for civil liability, the Court is cognizant that the central purpose of the Louisiana Securities Law is to protect against fraud, namely by requiring full disclosure, in connection with the purchase or sale of securities. See Godair v. Place

Vendome Corp. of America, 93-1818 (La.App. 1 Cir. 12/22/94), 648 So.2d 440, 448. This purpose requires a broad view of violations, but not so broad as to encompass purely innocent conduct. A review of pertinent Louisiana case law seems to indicate that the statute's language regarding omissions contemplates omitted statements that would be necessary to clarify or correct an already spoken statement. See La. R.S. 51:712; see Southeast Wireless Network, Inc. v. U.S. Telemetry Corp., 954 So.2d 120, 127 (La. 2007) (holding a director of a corporation personally liable under Louisiana Securities Law for remaining silent at a meeting where misrepresentations about the corporation were made in his presence, and, while he did not affirmatively make the misrepresentations, he failed to provide crucial and material information to correct such misrepresentations).

Here, plaintiffs allege both omissions and misstatements in their complaint but focus exclusively on the omissions in the briefing relating to the pending motions. Absent affirmative statements or misrepresentations which without additional information would be materially misleading, the plaintiffs cannot sustain a claim under Section 712. Reading the pleadings and responses liberally, this Court finds that plaintiffs have suggested two actions/statements/misrepresentations that could be construed as misleading absent additional information: (1) the instruction to wire the purchase money to Karon directly without informing Macareno or Candelaria that the money would not be used to purchase the property but rather would be spent at Gonzalez's sole discretion; and (2) the packaging of the operating statement into the sale by proximity and promise without revealing that Karon and Eagle Oil had limited experience operating mineral leases. Whether this is a situation invoking Section 712's directive against any omission to state a material fact necessary in order to make the statements made not misleading is a matter for the trier of

fact and cannot be determined at the summary judgment stage. Therefore, the Motion for Summary Judgment filed by defendants and the Cross-Motion for Summary Judgment filed by plaintiffs on the issue of fraud are **DENIED**.

## Conclusion

For the reasons stated above, defendants' Motion for Summary Judgment (Record Document 21) and plaintiffs' Cross-Motion for Summary Judgment (Record Document 26) are **DENIED**. Plaintiffs' claim for rescission and damages based on failure to register and fraud will proceed to the trier of fact. An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 24th day of February, 2010.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE